IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL STEVEN GUZMAN DIAZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:25-cv-3008-X-BN |
| | § | |
| KRISTI NOEM, Secretary, U.S. Department of Homeland Security, ET AL., | § § § | |
| | § | |
| Respondents. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from presiding District Judge Brantley Starr. *See* Dkt. No. 2.

Petitioner Michael Steven Guzman Diaz, detained at Prairieland Detention Center in this district, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 with the assistance of counsel on November 4, 2025 against five government officials ("Respondents"). *See* Dkt. No. 1. He argues that his detention without bond violates the Immigration and Naturalization Act ("INA"); bond regulations set forth in 8 C.F.R. §§ 236.1, 1236.1, and 1003.19; and the Fifth Amendment Due Process Clause. *See id.*

After reviewing Guzman Diaz's initial filings in this case, the undersigned determined that service and an expedited response from the United States Attorney's

Office was required. *See* Dkt. No. 3. Respondents filed a response. *See* Dkt. No. 5.

For the reasons discussed below, the Court should grant in part the Petition for Writ of Habeas Corpus [Dkt. No. 1].

## Background

Petitioner Guzman Diaz is a citizen of El Salvador. *See* Dkt. No. 1-1; Dkt. No. 5 at 7. He has resided in the United States since September 9, 2012, when he entered without an inspection. *See* Dkt. No. 6 at 6.

He was ordered to attend a hearing in immigration court on August 16, 2023. *See* Dkt. No. 5 at 7-8; Dkt. No. 6 at 8. When he did not appear, an Immigration Judge ("IJ") ordered that Guzman Diaz be removed to El Salvador *in absentia*. *See* Dkt. No. 6 at 8.

With the assistance of counsel, Guzman Diaz filed a motion to reopen his *in absentia* removal proceedings, which was granted on August 16, 2023. *See id.* at 20-21. On April 18, 2024, upon a joint motion, an IJ dismissed the case without prejudice. *See id.* at 24-29.

On October 23, 2025, Guzman Diaz was arrested during a traffic stop. *See id.* at 6. The same day, he was issued a Notice to Appear by the Department of Homeland Security ("DHS"). *See id.* at 31-33.

Guzman Diaz remains in custody of Immigration and Customs Enforcement ("ICE") at the Prairieland Detention Center in Alvarado, Texas. *See* Dkt. No. 1 at 2; Dkt. No. 1-1.

Guzman Diaz filed a Petition for Writ of Habeas Corpus, claiming that he was misclassified under 8 U.S.C § 1225(b)(2), which authorizes mandatory detention, and should be classified under 8 U.S.C. § 1226(a). *See* Dkt. No. 1 at 14. He alleges that he is unlawfully detained without bond under Section 1225, in violation of the INA, bond regulations, and his due process rights under the Fifth Amendment. *See id*. at 14-16.

Guzman Diaz asks the Court to (1) assume jurisdiction over the matter; (2) enjoin the government from transferring him to another detention facility; (3) issue a writ of habeas corpus ordering Respondents to release him immediately or provide him with a bond hearing under Section 1226(a) within 7 days; (4) declare that his continued detention violates federal law and the Constitution; (5) award him costs and fees; (6) grant any further relief the Court deems just and proper. *See id*. at 16.

Respondents argue that Guzman Diaz is not entitled to relief because he is properly classified, and subject to mandatory detention, under Section 1225(b)(2). *See generally* Dkt. No. 6. And they contend that Guzman Diaz is not entitled to relief under the Due Process Clause. *See id*. at 26-28.

**Legal Standards and Analysis**

This habeas action is another in a flood of similar actions filed after the Board of Immigration Appeals ("BIA") eliminated the ability of IJs to make individualized bond determinations as to certain persons placed in removal proceedings. *See In re Yajure Hurtado*, 29 I&N Dec. 216, 220 (BIA 2025) (affirming "the Immigration Judge's determination that he did not have authority over [a] bond request" by a

-3-

noncitizen who has resided in the United States for more than two years); *see also* Kyle Chaney, *More than 100 judges have ruled against the Trump admin's mandatory detention policy* (Oct. 31, 2025, 4:29 PM), https://www.politico.com/news/2025/10/31/trump-administration-mandatory-detention-deportation-00632086.

As background,

> [t]wo statutes in the [INA] principally govern [these] detention[s]: 8 U.S.C. §§ 1225 and 1226. Section 1226 provides the general process for arresting and detaining noncitizens who are present in the United States and eligible for removal. 8 U.S.C. § 1226. The Supreme Court has explained that Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1226(a)). "[T]he Attorney General 'may release' an alien detained under § 1226(a) 'on bond or conditional parole.'" *Id*. (citation modified). But "aliens who are covered by § 1225(b)(2) are detained pursuant to a different process" and "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." *Id*. (quoting § 1225(b)(2)(A)). Hence, "noncitizens detained under section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under section 1226(a) are entitled to a bond hearing before an IJ at any time before entry of a final removal order." See, e.g., *Rodriguez v. Bostock*, ___ F. Supp. 3d ___, 2025 WL 2782499, at *3 (W.D. Wash. Sept. 30, 2025).

*Covarrubias v. Vergara*, No. 5:25-cv-112, 2025 WL 2950097, at *2 (S.D. Tex. Oct. 8, 2025).

And "[t]he principal issue" in these cases "is whether [the habeas petitioner] has been erroneously categorized as a detainee subject to 8 U.S.C. § 1225(b)(2), which

prescribes mandatory detention during removal proceedings, or if he [or she] is subject to 8 U.S.C. § 1226(a), which provides for discretionary detention and a bond hearing regarding whether the noncitizen is a flight risk or poses a danger to the community." *Id.*

Against this background, the undersigned turns to Guzman Diaz's request for relief.

## I.   THE INA

The undersigned first finds that detaining Guzman Diaz without a bond hearing under Section 1225(b)(2) violates the INA.

Although Respondents point to cases in federal district court that hold differently, *see* Dkt. No. 5 at 25-26, the undersigned reaches its conclusion for the reasons succinctly and persuasively explained in *Covarrubias*, 2025 WL 2950097, at *2, which, in turn, relied on almost every other federal district court in this circuit and elsewhere that has tackled this issue:

> [Guzman Diaz] contends that he is being detained under Section 1226(a) and should have a bond hearing, but Respondents argue that he is subject to mandatory detention under Section 1225(b)(2), and therefore, not entitled to a bond hearing.
> 	The difference in interpretation emanates from the Government's recent reevaluation of immigration detention authority. The [DHS] and Department of Justice (DOJ) released interim guidance on July 8, 2025, announcing a new legal position on detention and release authorities. The guidance interprets INA Section 235 (8 U.S.C. § 1225) as applying to the detention of all "applicants for admission," including all noncitizens who have not been admitted, whether or not they arrive at a port of entry….
> 	[W]hether [Guzman Diaz] falls under Section 1226(a) or

> 1225(b)(2) is a matter of statutory interpretation. Statutory interpretation is the province of the courts, not agencies. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024).
>
> The [undersigned] finds that Section 1226, not Section 1225, applies to [Guzman Diaz's] detention. As almost every district court … has concluded, "the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades" support application of Section 1226. *Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) (Rosenthal, J.) (collecting cases).

*Id.* at *3 (cleaned up); see also *Buenrostro-Mendez*, 2025 WL 2886346, at *3 ("The court need not repeat the 'well-reasoned analyses' contained in these opinions and instead simply notes its agreement. The respondents have failed to provide controlling authorities or persuasive reasons that would justify reaching a different result. Section 1226(a), not Section 1225(b), applies to [the petitioner]." (cleaned up)).

And, because the undersigned finds that Respondents have violated the INA, it need not address Guzman Diaz's parallel argument that Respondents have violated the bond regulations set forth in 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

## II. PROCEDURAL DUE PROCESS

### A. Availability of Procedural Due Process Protections

The undersigned also finds that detaining Guzman Diaz without a bond hearing violates his Fifth Amendment rights.

In this case, Respondents elect not to expressly rely on *Department of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), to oppose Guzman Diaz's due process arguments. See Dkt. No. 11 at 27-30.

Regardless, because the undersigned finds that Guzman Diaz is erroneously categorized as detained under Section 1225(b)(2), the Court should reject Respondent's related argument that, because Section 1225 "says nothing 'whatsoever about bond hearings' … [n]o procedural due process claim is stated." Dkt. No. 5 at 28 (quoting *Jennings*, 583 U.S. at 297).

And, to the extent that Respondents may rely on *Thuraissigiam* to deny this due process claim, the undersigned agrees with the court in *Lopez-Arevelo v. Ripa* and other courts in the Fifth Circuit that have found *Thuraissigiam* to be distinguishable in this context. *See* ___ F. Supp. 3d ___, No. EP-25-cv-337-KC, 2025 WL 2691828 at *7-10 (W.D. Tex.); *see also, e.g.*, *Vieira v. De Anda-Ybarra*, ___ F. Supp. 3d ____, No. EP-25-cv-432-DB, 2025 WL 2937880, at *4-5 (W.D. Tex. Oct. 16, 2025); *Gonzalez Martinez v. Noem*, No. EP-25-cv-430-KC, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025); *Santiago*, 2025 WL 2792588, at *7-10; *Hernandez-Fernandez v. Lyons*, No. 5:25- cv-773-JKP, 2025 WL 2976923, at *7-8 (W.D. Tex. Oct. 21, 2025).

In *Thuraissigiam*, "[t]he [Supreme] Court did not address whether noncitizens mandatorily detained under § 1225(b) have a constitutional due process right to challenge the fact or length of their detention, as [Guzman Diaz] does here." *Lopez-Arevelo*, 2025 WL 2691828, at *8. Unlike in *Thuraissigiam*, where the petitioner challenged his deportability and the denial of his asylum admission, Guzman Diaz challenges his detention without a bond hearing. *See* 591 U.S. at 114-15. In the context of detention under Sections 1225(b) and 1226(a), the United States Court of

Appeals for the Fifth Circuit has "expressly left open the constitutional due process question" for lower courts to consider. *Lopez-Arevelo*, 2025 WL 2691828, at *8 (citing *Jennings*, 583 U.S. at 312).

The petitioner in *Thuraissigiam* was also stopped and detained "within twenty-five yards of the border" and was not released or permitted to reside in the United States. 591 U.S. at 114.

But Guzman Diaz has resided in the United States since 2012. See Dkt. No. 1, ¶ 20; *Lopez-Arevelo*, 2025 WL 2691828, at *9 (distinguishing *Thuraissigiam* because petitioner had resided in the United States for three years).

And, so, Guzman Diaz is entitled to procedural protections under the Fifth Amendment's Due Process Clause. And the undersigned will consider his claim that his detention violates his due process rights.

### B. *Mathews* Balancing Test

"To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem*, No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025) (cleaned up).

The three factors to consider are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function

involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335 (cleaned up).

"The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Id.* at 348 (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S., at 171-172 (1976) (Frankfurter, J., concurring)).

### 1. Private Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Vieira*, 2025 WL 2937880, at *6 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). Even though Guzman Diaz entered the United States without inspection, he has been present in our society for over a decade. And, based on that, the undersigned finds that he acquired a "cognizable interest in his freedom from detention that deserves great weight and gravity." *Vieira*, 2025 WL 2937880, at *6.

And, so, the first factor weighs in favor of Guzman Diaz.

### 2. Risk of Erroneous Deprivation and Value of Additional Safeguards

As to the second factor, Guzman Diaz is in custody. Without a bond hearing, he will likely remain in custody. And the risk of an arbitrary deprivation is greater given the BIA's new interpretation of Section 1225(b)(2). *See Vieira*, 2025 WL 2937880, at *7; *Lopez-Arevelo*, 2025 WL 2691828, at *11.

"[A]gency decisionmakers regularly 'conduct[] individualized custody determinations … consider[ing] flight risk and dangerousness.'" *Gonzalez Martinez*, 2025 WL 2965859, at *4 (cleaned up). So a bond hearing would "give [Guzman Diaz] the opportunity to be heard and receive a meaningful assessment of whether he is dangerous or likely to abscond." *Lopez-Arevelo*, 2025 WL 2691828, at *11.

And, so, a bond hearing would reduce the risk of an erroneous deprivation of Guzman Diaz's liberty. And the second factor weighs in favor of Guzman Diaz.

### 3. Government's Interest

Respondents argue that the Supreme Court has recognized an interest in detaining undocumented individuals during "the limited period necessary for their removal proceedings." *See* Dkt. No. 5 at 27 (quoting *Demore v. Kim*, 538 U.S. 510, 526 (2003)). And they contend that Guzman Diaz "is being detained for the limited purpose of removal proceedings and determining his removability." *Id.*

But they do not explain their interest in making those determinations while detaining Guzman Diaz without bond – that is, they do not explain why holding him without bond is "necessary." *Demore*, 538 U.S. at 526.

And, in any event, the government's interest in ensuring that Guzman Diaz appears for his removal proceedings "would be squarely addressed through a bond hearing." *Gonzalez Martinez*, 2025 WL 2965859, at *4.

And, so, the third factor weighs in favor of Guzman Diaz.

Because all three *Mathews* factors support Guzman Diaz, the undersigned

finds that denying him a bond hearing under Section 1225(b)(2) deprives him of his procedural due process rights under the Fifth Amendment.

### III. SUBSTANTIVE DUE PROCESS

Because the denial of a bond hearing violates Guzman Diaz's procedural due process rights and the INA, the undersigned declines to address his substantive due process claims. *See Santiago*, 2025 WL 2792588, at *6 n.2 ("[B]ecause the Court grants [the petition] on procedural due process grounds, the Court need not reach [the petitioner's] substantive due process … claims.").

### Remedy

Guzman Diaz asks the Court to (1) assume jurisdiction over the matter; (2) enjoin the government from transferring him to another detention facility; (3) issue a writ of habeas corpus ordering Respondents to release him immediately or provide him with a bond hearing under Section 1226(a) within 7 days; (4) declare that his continued detention violates federal law and the Constitution; (5) award him costs and fees; (6) grant any further relief the Court deems just and proper. *See* Dkt. No. 1 at 16.

Most courts confronting this issue have determined that the appropriate relief is a bond hearing. *See Lopez-Arevelo*, 2025 WL 2691828, at *12-13 (collecting cases); *Vieira*, 2025 WL 2937880, at *7 (collecting cases).

And, so, the Court should order that Guzman Diaz be given a bond hearing before an IJ and decline to award any other requested relief at this time.

**Recommendation**

The Court should grant in part Petitioner Guzman Diaz's Petition for Writ of Habeas Corpus [Dkt. No. 1] and require Respondents to provide him with a bond hearing before an IJ.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judges' findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 25, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE