IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL STEVEN GUZMAN DIAZ, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | No. 3:25-CV-3008-X-BN |
| | § | |
| KRISTI NOEM, Secretary, U.S. Department of Homeland Security, et al., | § § § | |
| | § | |
| *Respondents*. | § | |

**MEMORANDUM OPINION AND ORDER**

    This is one of many cases challenging Department of Homeland Security's (DHS) interpretation that aliens who are considered applicants for admission fall under 8 U.S.C § 1225 (Section 1225) and should be held without bond instead of being classified under 8 U.S.C § 1226 (Section 1226) and released on bond. The Court considers the report of the United States Magistrate Judge in this action, which was referred under 28 U.S.C. § 636. The Magistrate Judge understandably sided with the majority of district courts to have reviewed this issue. But on further review, this Court is more persuaded by the textualist analysis of Chief Judge O'Connor and Judge Hendrix from this district, Judge Eskridge from the Southern District of Texas, and Judge Joseph of the Western District of Louisiana. The Court writes here to add some relevant canons of interpretation to this discourse.

    The text and canons make clear that Section 1225 applies to aliens who are in the United States and have not received authorization from an immigration officer.

Guzman-Diaz is properly categorized under Section 1225 because he is in the United States and did not receive authorization from an immigration officer. For the reasons outlined below, the Court **REJECTS** the Magistrate Judge's findings and recommendations (Doc. 7) and **DENIES** Michael Steven Guzman-Diaz's (Guzman-Diaz) Petition for Writ of Habeas Corpus (Habeas Petition) (Doc. 1).

## I. Background

Guzman-Diaz is a citizen and native of El Salvador. He entered the United States near Progreso, Texas without being admitted or paroled in or around 2012. That same year, the government initiated removal proceedings against Guzman-Diaz by issuing him a notice to appear. In 2013, Guzman-Diaz failed to appear for a scheduled hearing before the Los Angeles Immigration Court, and the immigration judge ordered him removed *in absentia*.

In 2023, Guzman-Diaz moved to re-open his[1] removal proceedings and requested a change of venue to Texas. The Los Angeles Immigration Court granted both requests. In 2024, Guzman-Diaz appeared for his hearing before the Dallas Immigration Court, which granted a joint motion to dismiss Guzman-Diaz's removal proceedings without prejudice.

During a routine traffic stop on October 23, 2025, Guzman-Diaz was arrested after officers reviewed his criminal history and determined that he had previously

---

[1] The Habeas Petition states that Guzman-Diaz's detention violates "her" right to due process. Doc. 1 at 16. The Court assumes this is a relic of counsel's boilerplate habeas petitions flooding the district courts, but for the purpose of this Order, the Court elects to use masculine pronouns for Guzman-Diaz as that is what is reflected throughout the majority of the filings.

been arrested twice for vehicular offenses. DHS initiated new removal proceedings against Guzman-Diaz on the same day, issuing him a notice to appear. Since his arrest, Guzman-Diaz has remained in U.S. Immigration and Customs Enforcement (ICE) custody at the Prairieland Detention Center in Alvarado, Texas without a bond hearing.

Guzman-Diaz has since filed this Habeas Petition, against Respondents Kristi Noem, Secretary of DHS; Todd Lyons, Acting Director of ICE; Marcos Charles, Acting Executive Associate Director of ICE Enforcement and Removal Operations; Pamela Bondi, Attorney General of the United States; and the Warden of the Prairieland Detention Center (collectively "Respondents").

Guzman-Diaz asserts that ICE misclassified him under Section 1225, which requires mandatory detention of aliens who are applicants for admission. He asserts that he should be classified under Section 1226, which provides discretionary bond hearings for aliens. He alleges that his continued detention violates the Immigration and Naturalization Act (INA), bond regulations, and his due process rights under the Fifth Amendment.

In July 2025, DHS issued an internal policy (the "DHS Memo") advising that, in coordination with the U.S. Department of Justice, DHS had "revisited its legal position" and concluded that Section 1225, not Section 1226, "is the applicable immigration detention authority for all applicants for admission."[2] The Board of

---

[2] ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607, Am. Immigr. Laws. Ass'n (July 8, 2025). https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-

3

Immigration Appeals (BIA) subsequently issued a precedential decision adopting the view expressed in the DHS Memo, confirming that aliens who entered the country without admission are properly categorized under Section 1225 and therefore ineligible for bond.[3]

The Magistrate Judge issued findings, conclusions, and a recommendation that the Court grant in part Guzman-Diaz's Habeas Petition and order Respondents to provide Guzman-Diaz a bond hearing before an immigration judge.[4]   Respondents object.[5]

## II. Legal Standard

### A. Review of a Magistrate Judge's findings, conclusions, and recommendation

Magistrate Judges have statutory authority "to issue findings and recommendations regarding dispositive motions in cases referred to them."[6]   The statute allows the parties to file written objections within 14 days of the proposed findings and recommendations and for a de novo determination of matters "to which objection is made."[7]   Consistent with Section 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3), the Court reviews the Magistrate Judge's reports.   In doing so,

---

admission [https://perma.cc/5GKM-JYGX].

[3] *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (holding that "applicants for admission" must be detained without bond under Section 1225(b)(2)(A) of the INA).

[4] *See* Doc. 7.

[5] Doc. 8.

[6] *Ware v. Colvin*, 2013 WL 3829472, at *1 (N.D. Tex. July 24, 2013) (Solis, J.); *see* 28 U.S.C. § 636(b)(1)(B).

[7] 28 U.S.C. § 636(b)(1).

the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."[8]

## B. Habeas Corpus

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States."[9]

To be entitled to a writ of habeas corpus, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]"[10] Habeas corpus proceedings are available to aliens "as a forum for statutory and constitutional challenges to post-removal-period detention."[11]

A writ of habeas corpus is reserved for "fundamental defects" resulting in a "complete miscarriage of justice" or wholly inconsistent with the demands of fair procedure.[12]  This exceptional relief "is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired."[13]

---

[8] FED. R. CIV. P. 72(b)(3).

[9] *Hamdi v Rumsfeld*, 542 US 507, 525 (2004).  The Court observes that the volume of alien detainees filing petitions for this exceptional relief is unprecedented and is placing significant strain on executive and judicial resources.  In 2023, there were 10 active habeas cases in the Northern District of Texas.  As of mid-January 2026, the Northern District of Texas had approximately 140 active habeas petitions.  The Western District of Texas is on pace to receive more than 500 such petitions in January 2026 alone, requiring emergency assistance from the Administrative Office of the Courts to process largely boilerplate requests for extraordinary relief.

[10] 28 U.S.C. § 2241(c)(3).

[11] *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

[12] *See Hill v. United States*, 368 U.S. 424, 428 (1962).

[13] *Bowen v. Johnston*, 306 U.S. 19, 26 (1939).

### III. Analysis

This action is one of a litany of alien detention habeas petitions being filed across the country.[14] One flavor of these habeas petitions is challenging Respondents' current practice of classifying aliens without admission—regardless of when they unlawfully entered—under Section 1225 instead of the previous practice of classifying aliens under Section 1226.[15] This challenge follows the BIA's issuance of a precedential decision in line with the DHS Memo, binding all immigration judges to classify such aliens under Section 1225, and stripping the immigration judges of authority to consider an alien's bond request.[16] The dispute before the Court arises amid a split among federal district courts regarding whether classifying such aliens under Section 1225, instead of Section 1226, violates the INA; implementing regulations; or the Constitution.[17] As one court aptly noted, in the absence of binding precedent, district courts must confront the question directly.[18]

---

[14] The Court observes that counsel filing such petitions frequently reuse standardized templates and fail to proofread before submission. The Court has identified a recurring pattern in which counsel revises certain portions of their filings while leaving other provisions unchanged, resulting in internal inconsistencies. *See, e.g.*, Doc. 1 at 2, 5, 16 (alleging that Petitioner is detained at the Edna Detention Center in Edna, Texas, and requesting that Petitioner not be transferred outside the Southern District of Texas). Attorneys for the petitioners in such habeas cases routinely seek attorney's fees for failing petitions under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.

[15] *See ICE Memo,* supra *note* 2.

[16] *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216.

[17] *Compare Cabanas v. Bondi*, No. 4:25-CV-4830, 2025 WL 3171331, at *5 (S.D. Tex. Nov. 13, 2025) (Eskridge, J.) (collecting decisions holding that the statutory text of Section 1225 provides the appropriate framework for evaluating the permissibility of a petitioner's detention pending otherwise valid removal proceedings) *with Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *8 n.5 (E.D. Mich. Aug. 29, 2025) (collecting decisions holding that the statutory text of Section 1226 provides the appropriate framework for evaluating the permissibility of a petitioner's detention pending otherwise valid removal proceedings).

[18] *Cabanas*, 2025 WL 3171331, at *5 ("Until such time as the Fifth Circuit takes up this issue

This Court follows the decisions that have thoughtfully applied a textual approach, concluding that individuals such as Guzman-Diaz are applicants for admissions who are subject to mandatory detention.[19] Here, this Court stands on the shoulders of these careful analyses and offer a small, complementary perspective to further illuminate this important and developing issue.[20]

### A. Classification Under Section 1225 or Section 1226 of the INA

Guzman-Diaz's Habeas Petition argues that he is misclassified under the INA because Section 1225 does not apply to aliens "who previously entered and are now residing in the United States."[21] Respondents assert that Guzman-Diaz is lawfully detained under Section 1225 because he is an alien present in the United States without inspection or parole.[22]

"Section 1225 governs the inspection, detention, and removal of aliens seeking admission into the United States."[23] Section 1225(a)(1) defines which aliens are "treated as applicants for admission":

---

and gives an authoritative construction, it remains incumbent upon district courts to each make their own, independent assessment.").

[19] *See, e.g.*, *Cabanas*, 2025 WL 3171331 (Eskridge, J.); *P. B. v. Bergami*, No. 3:25-CV-02978-O, 2025 WL 3632752 (N.D. Tex. Dec. 13, 2025) (O'Connor, C.J.); *Garibay-Robledo v. Noem*, No. 1:25-CV-177-H, 2026 WL 81679 (N.D. Tex. Jan. 9, 2026) (Hendrix, J.); *Sandoval v. Acuna*, No. 6:25-CV-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025) (Joseph, J.) (providing a non-exhaustive list of decisions the Court found most persuasive in applying a textual approach to interpret the statutory text of Sections 1225 and 1226).

[20] Think of this as adding a Dr Pepper to an already excellent Texas barbecue dinner: the main course—the prior analyses—remains thoroughly satisfying, and this Court's contribution merely hopes to add some fizz.

[21] Doc. 1 at 3.

[22] Doc. 5 at 7.

[23] *P. B.*, 2025 WL 3632752, at *3 (citing INA § 1225).

> An alien present in the United States who has not been admitted *or* who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) *shall* be deemed for purposes of this chapter an applicant for admission.[24]

In clarifying which aliens are "present in the United States who ha[ve] not been admitted" one Court explained that "under the plain text of § 1225(a)(1), any alien physically present in the United States who has not been admitted is an applicant for admission, regardless of how long they have been in the country or whether they intended to apply or enter properly."[25]

Once an alien is found to be an "applicant for admission" under the definition in Section 1225(a), the statute further clarifies in Section 1225(b)(2)(A) the inspection process for applicants for admission stating that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending his removal proceedings.[26] The parties do not contest that *if* an alien is properly characterized under Section 1225, then he must be subject to mandatory detention—rightly so, as the text of the INA weighs heavily against requiring bond hearings for such aliens.[27]

On the other hand, aliens subject to Section 1226 are eligible for discretionary detention:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed

---

[24] INA § 1225(a)(1) (emphases added).

[25] *Sandoval*, 2025 WL 3048926, at *4 (cleaned up).

[26] INA § 1225(b)(2)(A).

[27] *See* Doc. 1 at 7; Doc. 5 at 1.

8

from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole[.][28]

In evaluating alien-detention decisions, reviewing courts must "take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive [ICE] efforts to enforce this complex statute, and the Nation's need to speak with one voice in immigration matters."[29]

The Court agrees with the learned judges in full who have faithfully applied the text of Sections 1225 and 1226 holding that aliens—regardless of when they entered and how long they have been residing in the United States—are properly

---

[28] INA § 1226(a).

[29] *Zadvydas*, 533 U.S. at 700. An interesting question arises as to whether there is any deference to the executive branch now that the Supreme Court has overruled *Chevron* deference. It's entirely possible that such deference is still due. *Chevron* and the case that overruled it, *Loper-Bright*, arose under the Administrative Procedure Act (APA). And the Supreme Court held in *Loper Bright* that "[t]he deference that *Chevron* requires of courts reviewing agency action cannot be squared with the APA" because "the command of the APA that the reviewing court—not the agency whose action it reviews—is to decide all relevant questions of law and interpret statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 398 (2024) (cleaned up). These cases arise under the writ of habeas corpus, a common-law cause of action that predated the Founding and is shaped by federal law that simply require courts to "dispose of the matter as law and justice require" but not to take a de novo review of the law as in the APA. 28 U.S.C. § 2243. Unless and until the Supreme Court overrules its command in *Zadvydas* to take appropriate account of the administration's expertise with immigration matters, this Court cannot rule the way so many other district courts have without according the respect to the administration that the Supreme Court commands. *See Cooper v. Aaron*, 358 U.S. 1, 18 (1958).

considered "applicants for admission" under Section 1225 if they have yet to be legally admitted in the United States.[30]

Specifically, Chief Judge O'Connor adds a robust discussion using dictionaries to support his plain meaning reading of Section 1225.[31] Judge Jospeh aptly explains how the proper interpretation of Section 1225 does not render Section 1226 superfluous.[32] Judge Hendrix undertakes a thorough analysis of the statutory history of the INA and how it "confirms what the plain text already makes clear: aliens who illegally entered the United States and are later apprehended in the interior are applicants for admission."[33] And Judge Eskridge pointedly defeats the arguments that Section 1226 would apply and provides a thorough analysis, which includes a discussion of how even legislative history points towards Section 1225 covering such aliens.[34]

The Court agrees with this interpretation. As such, Guzman-Diaz is considered an "applicant for admission" under the plain meaning of Section 1225 and must be detained without bond pending his removal proceedings.[35]

---

[30] *See* cases cited *infra* note 19.

[31] *P. B.,* 2025 WL 3632752, at *5.

[32] *Sandoval*, 2025 WL 3048926, at *5 (explaining that admitted aliens—such as the lawful permanent resident in *Jennings*—would be classified under Section 1226 but cannot fall under Section 1225 because a lawful resident *has* been admitted).

[33] *Garibay-Robledo*, 2026 WL 81679, at *6 (cleaned up).

[34] *Cabanas*, 2025 WL 3171331, at *3–6.

[35] INA § 1225(a), (b)(2)(A).

### B. Application of the Canons of Interpretation

Moreover, the Court notes that an application of the canons of interpretation leads to the same result. The Court provides a sampling of four especially instructive canons as a non-exhaustive list which bolsters the textualist support for Guzman-Diaz's proper classification under Section 1225.

*Interpretive-Direction Canon*

"Definition sections and interpretation clauses are to be carefully followed."[36] Accordingly, courts are bound to apply the statutory definition Congress enacted and may not narrow that definition based on assumptions about the congressional intent that failed to be included in the definition as written.[37] Here, Congress expressly defined the term "applicants for admission" to include "an alien present in the United States who has not been admitted or who arrives in the United States."[38] That definition is controlling. Congress expressly defined "applicant for admission" to include aliens who are already here. The Court must apply the definition—not rewrite it. Consequently, because Guzman-Diaz has not been lawfully admitted to the United States, he is properly classified under Section 1225.

---

[36] Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 225 (Thompson/West, 2012).

[37] *See, e.g.*, *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 490 (5th Cir. 2014) ("When Congress provides a specific definition of a term, we must accept that meaning and limit our analysis to the prescribed definition."). *See also Delligatti v. United States*, 604 U.S. 423, 452 (2025) (Gorsuch, J., dissenting) ("As this Court has often explained, when Congress takes the trouble to supply an express definition, we are obligated to treat it as virtually conclusive, even—and perhaps especially—if it varies from what we might otherwise understand (or wish) the definition to be.") (cleaned up).

[38] INA § 1225(a).

### *Ordinary-Meaning Canon*

"Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense."[39] Section 1225 requires three things for an alien to be categorized as an applicant for admission: (1) an alien, (2) must be present in the United States, and (3) who has not been admitted.[40] The INA defines "admission" and "admitted" to be "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."[41] The INA does not define "authorization by an immigration officer." Dictionaries do. In ordinary English, authorization means an "act of authorizing; permission or power granted by an authority; sanction."[42] Thus, authorization by an immigration official connotes a positive act by the immigration official after inspection—not inaction over time.

Guzman-Diaz does not dispute that he was never authorized to enter the United States.[43] And Guzman-Diaz's unlawful presence over time does not change the fact that an immigration officer did not authorize him to be here. Accordingly, because Guzman-Diaz is (1) an alien, (2) present in the United States, (3) who has not been admitted, he is an applicant for admission under Section 1225.

---

[39] Scalia & Garner, supra, at 69.

[40] INA § 1225(a).

[41] *Id.* § 1101(a)(13)(A).

[42] *See, e.g.*, *Webster's Encyclopedic Unabridged Dictionary of the English Language* 100 (1996) (defining "authorization").

[43] Doc. 1 at 13.

*Presumption of Consistent Usage Canon*

"A word or phrase is presumed to bear the same meaning throughout the text; a material variation in terms suggests a variation in meaning."[44] When a statute "has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea."[45]

Congress used the distinct terms "arriving alien"[46] and "applicants for admission"[47] throughout Section 1225. Because these are different terms, they must be given different meanings. Although the term "arriving alien" may suggest a temporal element—that the alien is actively or presenting arriving, the term "applicants for admission" does not. So the Court cannot transpose the temporal component of an "arriving alien" onto "applicant for admission." Congress did not say an "arriving" applicant but only an "applicant."

What is more, Section 1226 uses another distinct term in its coverage: "alien."[48] While the broad definition of an "alien" under Section 1226 may also be an "applicant for admission," the inverse is not true. And the Court cannot hold them to have identical meanings.[49]

---

[44] Scalia & Garner, supra, at 170.

[45] *Id.*

[46] INA § 1225(a)(2), (c)(1), (d)(2).

[47] *See, e.g., id.* § 1225(a)(1), (b)(2).

[48] *Id.* § 1226.

[49] That one category may fall within another does not render the two synonymous. Geometry supplies the useful reminder that while a square is a rectangle, a rectangle is not thereby a square—a lesson equally applicable to statutory interpretation here.

Subsequently, the Court must give effect to Congress's deliberate choice of distinct terms and decline to collapse "arriving alien," "applicant for admission," and "alien" and instead give each term its distinct meaning.

*Surplusage Canon*

"If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."[50] "It would be dangerous in the extreme, to infer from extrinsic circumstances, that a case for which the words of an instrument expressly provide, shall be exempted from its operation."[51] Guzman-Diaz's reading of Section 1225 saps the statute of its operative force by asserting that Congress's definition of "applicant for admission" was intended to be more narrowly enforced than it currently is. Limiting Section 1225 only to actively arriving aliens and excluding aliens who have unlawfully resided within the United States for some period of time would render Congress's definitional language largely superfluous and drain meaning from its express reference to aliens "present in the United States."[52] Because courts avoid interpretations that reduce carefully chosen statutory text to surplusage, the Court must reject this interpretation.

---

[50] Scalia & Garner, *supra*, at 174.

[51] *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 202 (1819) (per Marshall, C.J.).

[52] INA §§ 1225(a)(1).

In sum, each relevant canon confirms what the above-cited judges have already concluded: Guzman-Diaz is properly categorized under Section 1225 as an applicant for admission and is lawfully detained without having been provided with a bond hearing.

### C. Relevant Bond Regulations

Guzman-Diaz asserts that his detention without a bond hearing violates the relevant bond regulations. Because the Magistrate Judge found that Respondents violated the INA, the Magistrate Judge did not address Guzman-Diaz's parallel argument that Respondents violated the bond regulations set forth in 8 C.F.R. §§ 236.1, 1236.1, or 1003.19.[53] However, for all the reasons stated above, because Section 1225 applies to Guzman-Diaz and mandates detention, he is ineligible for a bond hearing.

### D. Due Process Concerns

Guzman-Diaz alleges that Respondents' detention of him without a bond hearing violates his right to due process. The Supreme Court has expressly endorsed the constitutionality of an alien's detention during removal proceedings.[54] Guzman-Diaz's allegations of due process violations in light of his detention without bond is merely a recitation of his larger contention as to the relevant and applicable statute to apply. The Court resolved this argument above.[55] In short, because

---

[53] Doc. 7 at 6.

[54] *See Denmore v. Kim*, 538 U.S. 510, 523 (2003) (holding "detention during deportation proceedings" is a "constitutionally valid aspect of the deportation process.").

[55] *See* discussion *supra* Section III.A.

Respondents provided Guzman-Diaz with the process to which he was due under Section 1225, his due process claim fails.

### IV. Conclusion

For the reasons stated above, the Court **REJECTS** the Magistrate Judge's findings and recommendations and **DENIES** Guzman-Diaz's Habeas Petition.

**SO ORDERED** this 5th day February, 2026.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE